## No. 17,015.

### DEPARTMENT OF EMPLOYMENT SECURITY ET AL. *v.*
### GENERAL CLEANERS AND DYERS.
(263 P. [2d] 574)

Decided September 28, 1953.   Rehearing denied October 19, 1953.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. HENRY E. ZARLENGO, Assistant, for plaintiffs in error.

Messrs. THURMAN, GREGORY & TAYLOR, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

A JUDGMENT in the sum of $23,051.14, a stipulated amount, was, on September 15, 1952, entered against plaintiffs in error and in favor of defendant in error, on a determination by the trial court that the above amount was due defendant in error as a refund of contributions paid under protest to the Department of Employment Security of the State of Colorado for the years 1947 and 1948 under the employment security statute.

The facts are really simple and not in dispute, and submitted on a stipulation which is to the effect that if the judgment of the trial court is right in finding the defendants entitled to relief, it is in the above agreed amount. In other words, the department is liable for this amount or not at all, which depends entirely upon whether or not defendant in error became liable under section 7 (d), chapter 189, S.L. '43, or under the amendment now appearing as section 7 (d), chapter 323, S.L. '47. Application for credit or refund was made and denied prior to the commencement of this action. A part of the amount in controversy involves the difference between 2.7 per cent of defendant in error's payroll and 9/10ths of 1 per cent, the amount ·its predecessor had been liable for, and was paying, prior to October 6, 1946. Under the latter date the business in question and all property in connection therewith was operated as a general cleaning and dyeing business by a copartnership under the trade name of New Method Cleaners and Dyers at 939 East Colfax avenue, Denver, and the partnership was divided as follows:

| | |
|---|---|
| H. Friedland | 40% |
| E. Carake | 40% |
| J. H. Reagan | 20% |

Prior to this date a corporation was organized under

the name of General Cleaners and Dyers, Inc., which took over the property, business control, and all the assets and employees of the partnership, but continued the operations under the old trade name of New Method Cleaners and Dyers. Up to that time the corporation had not been an employer or an employing unit and the partnership had been an employer for many years, and, in the words of the statute, had acquired "benefit, experience and payroll" status and was paying contributions to the state department at the rate of 9/10ths of one per cent of its payroll and it did not voluntarily terminate its liability for such contributions as is provided in the Act. The successor corporation did not elect to become liable for the balance of the calendar year of 1946, although such opportunity was provided by the department.

There can be no question under the stipulated facts, and in accordance with the statute or Act, as it may be referred to, that the successor corporation during the years 1947 and 1948 had employees at such times and in such numbers as to bring it squarely within the terms of the Act and it became liable for contributions as of January 1, 1947. Unless it was entitled to, or could acquire the status of its predecessor in business, which it claims it acquired, it would be liable for, and was called upon to pay, 2.7 per cent of its payroll to the department. The plaintiffs in error, otherwise referred to as the department, contend that the successor could not qualify under the act as it stood on October 6, 1946, the time of the transfer, because the successor was not a person or persons or corporation representing fifty per cent of the same holdings prior to the transfer. It is shown that only one of the copartners, whose interests have been hereinbefore set out, acquired any interest in the successor corporation, and that interest was only 750 shares out of a capitalization of 15,000 shares. The statutory Act clearly provides that fifty per cent or more of the control of the management of the successor must be held im-

mediately after the transfer by the same person or persons who immediately prior to the transfer held fifty per cent or more of the management of the predecessor. At this point it is necessary that we set out the Act as it was in force and effect on the date of the transfer, October 6, 1946, and the amendment, which became effective April 28, 1947:

Section 7. (d) chapter 189, S.L. '43:

"Any employing unit which acquires the organization, trade, or business, or substantially all of the assets thereof, of any employer, excepting, in any such case, any assets retained by such employer incident to the liquidation of his obligations (whether or not such acquiring employing unit was an 'employing unit' within the meaning of Section 19 (d) of this act prior to such acquisition), and who intends to continue such organization, trade or business, immediately shall notify the Commission thereof, and shall assume for the purpose of liability the position of such employer, and shall assume, for the purpose of determining the contribution rate of such employing unit after such acquisition, the position of such employer with respect to such employer's separate account, actual contribution and benefit experience and annual payrolls, as if no change with respect to such separate account, actual experience and payrolls had occurred and with the same effect for such purpose as if the operations of such employer had at all times been carried on by such employing unit. Such separate account shall be transferred by the Commission to such employing unit and, as of the date of such acquisition, shall become the separate account or part of the separate account, as the case may be, of such employing unit, and the benefits thereafter chargeable to such employer on account of employment prior to the date of such acquisition shall be charged to such separate account.

"The provisions of this subsection shall apply only to those employing units in which fifty percent or more of

the control of the management of such employing unit is held immediately after such acquisition by the same person or persons who immediately prior to such acquisition held fifty percent or more of the control of the management of such employer, and, if there be more than one person then only if the respective holdings of such persons in the control of the management of such employing units are substantially in the same proportions one to another as their respective holdings in the control of the management of such employer were one to another."

Section 3: chapter 323, S.L. '47:

"Section 7. (d) Any employing unit which acquires the organization, trade, or business or substantially all of the assets thereof, of any employer, excepting, in any such case, any assets retained by such employer incident to the liquidation of his obligations (whether or not such acquiring employing unit was an 'employing unit' within the meaning of Section 19 (d) of this Act prior to such acquisition), and who intends to continue such organization, trade or business, immediately shall notify the Department thereof, and shall assume for the purpose of liability the position of such employer and shall be liable for the contributions for such business from the date the transfer occurred.

"If the successor is an employer at the time of the transfer, and has been assigned a contribution rate, he shall continue to pay contributions at such previously assigned rate from the date the transfer occurred through the next December 31.

"With regard to transfers prior to the effective date of this Act, if written notice of such transfer shall be given to the Department on or before December 31, 1947, and if the successor employing unit was a subject employer at the time of the transfer and continues to be a subject employer, the separate account, actual contribution and benefit experience and payrolls of the predecessor shall be transferred to the successor employer for

the purpose of determining each successor's rate of contribution as of the computation date next following the effective date of the Act adding this section.

"If the successor is not an employer at the time of the transfer, and acquires the business of one employer or the businesses of two or more employers with the same rate, he shall pay contributions at the rate assigned to the predecessor employer or employers from the date the transfer occurred through the next December 31.

"If the successor is not an employer at the time of the transfer and simultaneously acquires the businesses of two or more employers with different rates of contribution, his rate from the date the transfer occurred through December 31 shall be a recomputed rate based upon the combined experience of his predecessors as of the regular computation date for the year in which the transfer occurred; save and except in the event the transfer occurs between the date of January 1 and June 30, inclusive, then and in that event, the computation date shall be January 1.

"In all cases, including and after January 1 following the transfer, the successor's rate of contribution for each year thereafter shall be based upon his experience with contributions paid, payrolls, and benefits, combined with the experience of his predecessor or predecessors as of the regular computation date of that year."

▇▇ Plaintiffs in error are not contending that the portions of the Act here involved are unconstitutional, but do contend that if these sections are subject to the interpretation given them by the trial court, then they are unconstitutional. Plaintiffs in error contend that the trial court, by its interpretation, read into the Act retroactive features against which there is clear constitutional prohibition. As we read the two Acts, they are clear and unambiguous and an interpretation thereof is not the paramount question here involving the question of the intent of the legislature, leaving the problem as one of application of the law, as clearly written, to the facts

involved. If the Acts are uncertain, thereby causing doubt and confusion in the administration thereof, then, and then only, may construction be resorted to.

█ It is admitted that the successor corporation was not an employer before the transfer, and due to the date, late in the year, was not subject to the terms of the Act for the remaining portion of the year 1946. For that period it had no liability and none could be imposed upon it by retroactive legislation, or interpretation to that effect. It now contends that because its operation is based upon its election, that as applied to it, the Act is not retroactive. So-called election or notice thereof is not to be confused with the wording of the statute which requires "written notice" of transfer that may be given prior to December 31 of the year involved. This part of the Act is quoted by the successor corporation, but it neglected to quote the remaining part of the Act which provides further that the successor employing unit was a subject employer at the time of the transfer. The written notice required is not one of election by the successor, and is only a written notice of the transfer, which may come from the predecessors as well as the successor, and which most likely would be the case generally, because the predecessor has an interest in notifying the department of the transfer in order that it may no longer be liable thereunder. Here the successor does not meet the condition of being a "subject employer" at the time of the transfer.

The Act in effect at the time of the transfer clearly provided that before liability was imposed upon a successor transferee and the successor transferee could assume the contribution rate of its predecessor, fifty per cent or more of the control of the management of the transferee be held by the same person or persons who held fifty per cent or more of such management or business immediately prior to the transfer. It is admitted that the successor corporation did not meet this require-

ment because the persons holding fifty per cent or more of the partnership were not stockholders in the successor corporation.

■■ That part of the amended Act effective April 28, 1947, which has led to some confusion in this case is the reference therein to prior transfers. A careful study of the Act clearly discloses that it is applicable only to employing units that were already liable and where no new liability would be imposed. It is clear that an "employing unit," as such, was not here transferred, but only the assets or business of a partnership employing unit. Further consideration of the phrase contained in the amended Act "with regard to transfers prior to the effective date of this Act * * *," we note a limitation thereon in the words "if the successor employing unit was a subject employer at the time of the transfer * * *." Retroactive legislation or legislation retrospective in its nature meets with general disfavor because, generally, all statutes are looked upon to have prospective operation instead of producing retroactive results. In some instances statutes contain wording that clearly and unmistakably reveal an intention of the legislature to give a retrospective effect. However, if the wording is such as to raise a doubt, such doubt must be resolved against retrospective application; such statute must contain words of limitation confining its retroactive features to a certain purpose, and it will not be construed to extend beyond that clearly stated purpose. Sutherland Statutory Construction (3d ed.), vol. 2, chapter 22, section 2201.

For the reasons herein outlined, it is manifest that the successor corporation in this instance did not step into the shoes, so to speak, of the predecessor partnership, because it did not qualify under the Act and therefore could not enjoy the reduced contribution earned by its predecessor. The trial court was in error in so interpreting the statute as to give it retroactive effect to the end

that the successor corporation have judgment and the refund ordered.

The judgment is reversed.